16-0509, Ethan v. Brian Walker. Would both attorneys that are going to argue step up to the podium and please identify yourselves for the record. Good morning. My name is Paul Rogers. I'm with the Office of the State Appellate Defender and I represent Brian Walker. Mr. Rogers. Assistant State's Attorney Phyllis Warren on behalf of the people of the State of Illinois. Warren. Warren, yes, Your Honor. Good morning. Good morning. All right. Each of you will have about 15 minutes to present argument. And, counsel, from that you may save up some time for rebuttal. Yes, I wish to do that. Thank you. All right, Mr. Rogers. You may proceed. Thank you. Good morning again. Good morning. May it please the Court. Counsel. This appeal requires an over-review of an order summarily dismissing a pro se post-conviction petition. This Court only needs to find that there's one arguably meritorious claim raised in the petition in order to survive. Mr. Rogers. Yes. With regard to the 25-year enhancement, is it your position that in any of the previous pleas he did not raise that issue? Is that correct? In any of the previous... In any of the previous appeals. I believe you're right. So it was never raised. And when he had the original sentencing in front of the trial judge, did the trial judge tell him about the 25-year enhancement? I believe the trial judge definitely imposed the 25-year enhancement, but I don't know that... I don't recall whether the judge admonished the defendant... Would your argument change if the trial judge did, in fact, tell him that he's receiving a 25-year enhancement for the firearm? At the time of sentencing? Yes. No. Why? Because the argument hinges on... Well, the argument hinges on whether or not he knew he was getting a 25-year enhancement. Is that correct? The argument... No, that's not exactly correct. Okay. Tell me why. The claim is ineffective assistance of counsel, with ineffective assistance being the failure to tell the client prior to trial that there was a mandatory 25-to-life enhancement. And that that resulted in the defendant rejecting the 27-year plea offer. I understand. If the defendant learned of that 25-year enhancement from an independent source, which would be in the record on the sentencing, if he learned of that, how can you then claim that his counsel was ineffective for not giving him information that he got from another source? Because the harm is that he turned down a plea offer. It never would have got to the sentencing after the trial. Right, but then he could have raised that issue in the direct appeal. Well, I disagree, and I don't think that because I don't think that the communication between client and counsel would have been something on the record. Well, how about this one? Right. Did he know that for murder, he was facing 20-to-60? Yes. All right. So let's just focus on that. You're conceding that he was aware that by going to trial on murder, he was facing 20-to-60. Well, actually, let me back up a second. I'm not 100% sure of that, but there's no claim that he wasn't. All right. So he had two prior convictions before he went to trial on this, didn't he? I don't recall whether he did. Well, I think that came out at sentencing. Yeah. But let's assume then that he knew he was facing 20-to-60. Right. All right. Now let's assume it. So his lawyer doesn't tell him that he could get another 25, right? Right. But he's going to get 60. He could get up to 60. Right. How can he claim prejudice when he's facing 60 and he rejects 27? And actually, in reality, he got 53. All that is true. Here's why he can claim prejudice. Keep in mind, it only has to be arguably prejudicial at this point. Now, as the state points out and as we agree, to show prejudice, there has to be three things. And one of them is that Mr. Walker would have accepted the offer if he had known about the enhancement. So he knew, let's assume that he knew he was facing up to 60. He turns down the 27-year offer. What he doesn't know is that the minimum is actually 45 and the maximum is life. But he didn't get any of those things. That doesn't matter. Well, prejudice does. It does matter. Prejudice does matter, but he would still be prejudiced because one of the things that you have to look at this from the standpoint of what the defendant know and didn't know when he turned down the 27-year offer. What he didn't know is that he's risking not just 20 to 60. He's risking 45 to life. But he got 53. So what he's really risking is the 60. He's risking 60 for 27. He was willing to go to trial and be subjecting himself to 60 years in the penitentiary. But instead, I mean, and he did go to trial. He rejected the 27, knowing full well that he could get 60. So how is there prejudice when he rolled the dice, when he knew he could get 60, and he rejected that 27? And he said, I'm going to trial. Well, when he rejected the 27, he didn't know that the minimum was 45 and the maximum was life. And under Hale, the disparity between what the offer was and what the potential sentence was upon a conviction is relevant in determining whether there was prejudice in this context. But under Hale, isn't it also required that the showing of prejudice must encompass more than a defendant's own subjective, self-serving testimony? Yes, Hale does stand for that proposition. But keep in mind that Hale, which I believe was a direct appeal following the denial of a motion to vacate a guilty plea, there had been an evidentiary hearing on the question of prejudice in that case, on the question of ineffective assistance in general. So here, we're just asking to get to the next stage, to allow the defendant to flesh out his claim of prejudice and then leave it up to the trier of fact to decide whether he established prejudice under Strickland or not. What do we have here that's more than a subjective, self-serving statement? Well, here I think you're getting at, without saying so, one of the issues that the state raised in defense of the summary dismissal order, and that is noncompliance with Section 122-2. Well, I'm taking the language from Hale. Hale says it. Is that a requirement? It is. All right. I don't think I'm asking about the section of the Post-Conviction Act. I'm asking about the Hale decision. Well, I apologize for misunderstanding your question. My point, though, is that the petition itself alleges he wasn't told, alleges that he had a 27-year offer. Yeah. Alleges that he, at the time, he wasn't told about the mandatory gun enhancements and that that amounted to ineffective assistance. The implication is he didn't come right out and say, I will admit, in his petition, I would have accepted the 27-year offer if I had known about the mandatory gun enhancement. Yeah, but isn't that the key? Isn't that the key here? He cannot show a reasonable probability that, but for his counsel's deficient advice, he would have accepted the plea offer. Well, Your Honor. I mean, isn't that what the cases hold? You have to at least say that, and you didn't say it in the petition. It has to say that he. You would have accepted the plea offer. I don't think there are any magic words required. I don't think so. Fry doesn't say that. Cooper doesn't say that. Hale doesn't say that. I don't think it says that you have to use any particular magic words. I think at this stage, the question is whether it's arguably prejudicial, and under immediate standards. They all say that he would have accepted the plea offer, but for that bad advice, and you don't say that in your petition, do you? Mr. Walker didn't say that in his petition, which he drafted without the aid of counsel. No, but let's assume he did say that. If he said, I wouldn't have accepted – let's assume he did say that. Let's assume he said, I wouldn't have accepted this – I wouldn't have gone to trial. Right. I would have taken the plea if I had been told about the 25-year add-up. Now, my question is, how does that amount to anything more than a subjective, self-serving statement? Well, in this context, there are really only two people that are likely to know what transpired between Cooper and Walker. Sure, and we don't have the lawyer. I give you that. Okay. So, the petition itself essentially alleges that Mr. Walker would be able to testify, my lawyer never told me about the gun enhancement. Yeah. Obviously, that's self-serving, but self-serving isn't – if you can't understand and testify to that, an objection based on it being self-serving would not be sustained. I guess maybe I'm misinterpreting, Hale. I was under the impression that it's like saying that if you say, I wouldn't have gone to trial, I would have taken the plea, that that's just not enough to show prejudice. That's what I'm getting at. Well, I would disagree with that. If you look at Hale and Frye and Laffler and the name of the other Supreme Court case, it's Curry, the Illinois Supreme Court case. If you look at all that together, I think it adds up to this. The question of prejudice is whether it would have been rational for the defendant in those circumstances to have accepted the guilty plea offer if he had known about the mandatory gun enhancement. Now, this is – keep in mind the disparity. The difference between 27 years and 45 to life. He thinks it's the difference between 27 years and 20 to 60. He's 20 years old. I think even a 20-year-old can appreciate the difference between getting out of prison when he's 47 and getting out no younger than 65 and possibly never. So I think it's arguably prejudicial. It's arguable that if he were to testify, that his testimony would be deemed credible by the trier of fact, by the post-conviction judge, and that would establish prejudice. I'm sorry. I don't mean to interrupt, but I just want to finish the thought. We also don't know at this point what guilty plea trial counsel would say. All right. It's possible that trial counsel would come in and admit. That's right. I didn't tell them. Okay. What about the other two? They're like alternate prongs. It's my understanding the state proceeded on one count, felony murder. Correct. It's also my understanding that they withdrew the offer before the trial began. Is that true? Well, if the record shows that. Technically, I don't mean to split hairs, but my recollection of the record is on the day of trial, the state said we're going to proceed only on the felony murder count. After announcing that, they said, by the way, we're revoking the offer. They didn't say what the offer was. When they went to trial, there was only one count standing, felony murder. Right. Okay. So how does the judge approve of a 27-year sentence? Well, the judge would have to. If there's this mandatory add-on. Well, let's discuss some of the reply we've made. It implicates the Pierre White case from the Illinois Supreme Court, in which they said if the gun is mentioned in the factual basis, then the gun enhancement has to apply. But White and subsequent cases, and frankly earlier cases, and subsequent cases say that if you omit the gun from the factual basis, you can impose a sentence that doesn't have the gun add-on. That would have been perfectly legitimate. And your argument on the other withdrawing the offer really is premature, so to speak, because he never had a chance to accept the offer. Right. I mean, it's on the day of trial, they tell him the offer is revoked. And even at that point, if he said, well, wait a minute, I changed my mind, even then he doesn't know. What happens if this record discloses that, you know, it's not uncommon, in fact, I think it's almost required, that when a judge arraigns a defendant or when they appear for the first time in bond court, that they're supposed to be told, you know, the charges and the possible penalties. Would it make a difference if, in this case, the record discloses that he was admonished not only about the 20 to 40, but the add-on for the? If he was told that it was mandatory consecutive because if it was proved. Not mandatory consecutive. Well, not mandatory consecutive. Add-on of 25. Right. If it was established that he grossly discharged the firearm. Right. I said mandatory consecutive because that's kind of the way the defendant framed it in his post-conviction petition, but mandatory add-on. If the record showed that he had notice of that, it certainly would undercut his claim. My recollection of the record is that he was not told that. I know the state hasn't argued, and the trial judge in dismissing, summarily dismissing the post-conviction petition, didn't cite that. We're not bound by anything that the state may concede or not concede, nor are we bound by the judge's reasoning. We can affirm on any basis if we find it. I'm not saying it's in the record, I'm just asking. But you would still argue that even under the 60, even if he was aware of the 60 years, that he's still prejudiced. That is your position. Yes, because he didn't know the correct range. So the fact that he knew 60, and I don't really mean to be flippant about this, but it's really neither here nor there because put yourself in the defendant's position. Okay, you know it could be 60. Yeah. It's not what you know, it's what you don't know. What you don't know is it could be life. Yeah. That's a big difference. I agree with you. I think it's an enormous difference. And I think that's, I'm sorry, I didn't mean to cut you off. No, I just don't know if he knows about the 60, and then in the end he gets 53, I'm not sure where that. He doesn't know when he's turning down the twice-a-year offer that he's going to wind up getting 53. In fact, he only got 53 because this court twice didn't manage for his sentence. So he did get 60. He didn't complain about that in the direct appeals. I don't think he could complain about the communication with, he could raise the ineffective assistance claim because that would have  And even if he, well, he certainly had no obligation to file his post-conviction petition until the direct appeal process had run its course, and that's exactly what he did. All right. Anything further you want to add at this time? No, I was prepared to talk about the issue relating to the 122-2 compliance, but if the court doesn't have any questions about that, I will just reserve any comments on that for rebuttal if the statement ends it up. All right. We'll give you some time for rebuttal. Thank you. Warren. Thank you. Your Honors, the trial court here properly, summarily dismissed defendant's post-conviction petition, and I'd like to focus on prejudice, as that's what we've been discussing here. Counsel just got up here and said that in order to establish prejudice, or one of the things Your Honors can look at is whether or not the record shows that it was not rational for defendant to reject this alleged plea offer. That's not what the standard here is. The standard is whether or not there was a reasonable probability that defendant would have accepted the plea offer, but for counsel's erroneous advice. Is there anywhere in the record that anyone informs the defendant, the judge, anyone, that he is subject to a 25-year enhancement? No, Your Honors. During sentencing. No one says that to him. At the point of sentencing, the court says, I'm hereby sentencing you to, I don't recall what the murder was off the top of my head, if it was 30 years or what have you, because there was a number of resentencing. But then he also said, and based on the firearm enhancement, I'm sentencing you to this many years. But prior to that, there was nothing on the record at arraignment or anything throughout the, even at the time of sentencing, the state did not, the state nor the defense nor the judge said, we're looking at this. It was at the time the judge actually pronounced sentence is when the number was brought up. But respective of that, Your Honors, the standard was reasonable probability of would he have accepted the plea. And liberally construing defendant's petition that, you know, I'd first like to take a step back. It's the state's position that nowhere in the petition does the defendant say, I would have taken the plea. And in fact, what defendant does say in his petition is, had he known about the firearm enhancements, he would have asked for or he could have asked for a bifurcated hearing. Now, we all know that that's not a legal possibility. But at that point in time, the defendant could have put in his petition, I would have pled guilty. There is nothing in the petition itself, and notably there's no affidavit that accompanies it that says, I would have taken the plea. Nowhere does defendant say he's going to take the plea. But even if we want to assume or liberally construe his statement that, I would have taken the plea, as Your Honors have pointed out, nowhere in his petition does defendant say, I didn't know what the minimum was. What he says is, I didn't know all the potential penalties. That's his claim. So defendant clearly was aware that he faced upwards to a 60-year potential sentence. Allegedly, the offer was 27 years. Twenty-seven years is well below the 60-year potential that he faced. The reasonable inference from that is that defendant did not want to accept a plea. He wanted to exercise his constitutional right to a trial, and that's demonstrated by the record. He asserted a self-defense claim. His statement to the police was self-defense. He didn't want to take any number of years. He wanted to get a sentence of zero. The record shows that at the time of arraignment, he said he entered a plea of not guilty. He had his trial counsel look for witnesses. His trial counsel was the one that was asking for continuances in order to locate these witnesses. And the defense filed was a self-defense, which we know is not available once the state elected on the felony murder count alone. So clearly this defendant had no desire to plead guilty. And as your honors have also made reference to, defendant's self-serving statement alone is not enough to establish prejudice under Strickland. There needs to be something more. And there's no affidavit that's attached that establishes anything more. There's nothing on the record. The only thing your honors have to look at is a few words in defendant's petition saying, my plea was not or my, excuse me, he doesn't even mention the word plea. What he says is my decision to go to trial was not knowingly made. What were the facts in Hale? What did the court eventually conclude in terms of the numbers of years that the defendant issued in exchange for the lesser? Your honor, I'm sorry. Wasn't it there the defendant passed up a 15-year sentence and went to trial and risked 30 years? I believe so, your honor. Well, how is that different from this case? Again, in this case the defendant knew that the potential was up to 60 years. And here the defendant passed up an offer that was well below a potential of 60 years, and the reasonable inference from that is that this defendant had no desire to plead guilty. That's what the record demonstrates. How did he know that he was facing the 60, 20 to 60? Nowhere in this petition, your honor, does this defendant ever allege that counsel gave him erroneous advice about what the murder potential or what the sentencing, excuse me, what the sentencing range was for the murder. Nowhere does he allege that. Your honor, if there's no questions about the section 122-2 argument, it's for these reasons and the reasons stated in our brief that we'd ask this court to affirm the defendant's, the trial court's dismissal of the defendant's pro se post conviction. Proceeding. Thank you. Mr. Rogers, rebuttal. Thank you. First, counsel for the state, I think accurately quoted what the standard is from Hale, that it has to be a reasonable probability that the defendant would have accepted the offer, but for counsel's ineffective assistance. I submit that a reasonable probability is equivalent to what I said earlier, which is that it would be rational for the defendant to have done so. And I think, as I explained earlier, I think it would be rational, arguably, it would be rational for a 20-year-old defendant to say they're ordering me 27. Gee, if I knew that the least I could get is 45, that sounds a lot better to me now than before when I thought it was 20 to 60. And without going too far afield here, this case isn't mentioned in the brief, so I apologize, but the court may be aware there was a 2017 Illinois Supreme Court decision in the case called Brown, which is sort of a mirror image situation which involves an ineffective assistance claim where the decision to plead guilty based on misadvice from counsel about the consequences of being found guilty of proceeding to trial. In Brown... So this isn't in your brief? No, it's not, but... All right, well, we'll let you, you know... I can say it in just one or two sentences. The point is that in Brown, when they talked about prejudice in that context, they talked about assessing it in terms of the rationality of the defendant's decision. And so I would just say that that applies analogously here. But moving on, I think the business about the defendant, including in his pro se pleading, that he would have opted for this bifurcated proceeding is really sort of a red herring. It doesn't really negate his claim that if he had known the true facts, what he was really exposed to, that he would have accepted a 27-year offer. We need to keep in mind that this is a pro se pleading. It has to be liberally construed, and it only has to be arguably prejudicial. If I heard the state correctly, they admitted that the defendant alleged that he didn't know the correct range, but they did know he was risking 60 years. But again, what matters is what he didn't know. So that he knew that it was 60 years is really not relevant. What matters is that he didn't know it was 45 to life. Counsel also talked about the defendant never wanted to plead guilty. He always wanted to take this case to trial. But he made that choice in the dark. He had no desire to plead guilty given what he knew. Whether he would have had a desire to accept a 27-year offer if he wasn't in the dark, that's why we need second stage evidentiary, or not evidentiary, second stage post-condition proceedings. Apart from that, I don't have anything else to add to what I've already said or what's in the briefs. All right. Well, thank you, Ben. Case was well argued, well briefed. We will take the matter under advisement, and now we'll call the next case.